

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LOUISA GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-078-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Louisa Garza seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

### I.   Standard of Review

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only

if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A), 42 U.S.C. § 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1505, 416.911 (2005).

A district court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g); Watson v. Barnhart, 288 F.3d 212, 215 (5th Cir. 2002) (citing Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999)). The Commissioner's decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

## II. Statement of the Case

Garza applied for SSI on January 31, 2002, alleging that she sustained permanent and disabling injuries to her hands and wrists from an assault that occurred in 1997. (Tr. 79, 103, 324.) After a hearing Administrative Law Judge (ALJ) Herbert J. Green determined at the fifth step of the sequential disability evaluation[1] process that Garza was capable of

---

[1] The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. At step five of the sequential evaluation process it is determined whether the claimant can perform work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f).

performing work that existed in the national economy despite the problems with her hands and wrists and was therefore not disabled. (Tr. 11-17.) The Appeals Council denied review and Garza appealed the Commissioner's final decision in the District Court. After Garza filed a supporting brief the Commissioner sought remand under sentence four of 42 U.S.C. § 405(g) for further proceedings to determine the impact Garza's non-exertional impairments would have on the occupational base; the Commissioner noted that Judge Green had relied on vocational expert testimony that did not adequately address the impact of Garza's exertional and non-exertional limitations on the occupational base.

On remand Judge Green considered additional evidence generated after his first decision, held a second hearing at which he obtained additional testimony from Garza and a vocational expert, and issued a second decision in which he again found at the fifth step of the sequential disability evaluation process that Garza was not disabled. (Tr. 328, 332-33, 380-94.) Specifically, Judge Green determined that Garza had noninsulin-dependent diabetes mellitus, a history of a fractured left wrist with traumatic arthritis, mild carpal tunnel syndrome, and a history of right median neuropathy/carpal tunnel syndrome, which he determined were severe impairments. (Tr. 325.) He determined that despite these severe impairments, Garza retained the residual functional capacity to perform simple light work activity that would require only occasional use of her hands and that would not require reading as part of the job. (Tr. 331.) Based on testimony offered by the vocational expert

at the hearing, he then determined that Garza could perform the jobs of machine tender, tag machine operator, and school bus monitor. (Tr. 332.)

The Appeals Council denied review of Judge Green's second decision and therefore that decision became the Commissioner's final decision for purposes of the appeal now before the court. 20 C.F.R. § 404.981.

In this appeal Garza contends that the ALJ failed to properly evaluate and accord sufficient weight to the opinion of Dwight D. Hood, M.D., her treating physician. She also contends that he erred in relying on the vocational expert's testimony that she could perform the jobs of machine tender, tag machine operator, and school bus monitor.

### III. **Discussion**

#### A. *Judge Green's evaluation of Dr. Hood's opinion*

Dr. Hood completed a questionnaire on Garza's behalf on which he indicated that she had carpal tunnel syndrome, weakness in her hands, and pain in her hands and wrists which was localized but occasionally radiated to her shoulders. (Tr. 355.) He further indicated that Garza would rarely be capable of lifting objects weighing ten pounds or less and that in an eight-hour day would be capable of using her left and right hand to grasp and turn and twist objects only 5 percent of the day, use her fingers for fine manipulations only 5 percent of the day, and use her arms for reaching only 5 percent of the day.[2] (Tr. 358.)

---

[2] Dr. Hood also indicated that Garza suffered from limitations unrelated to her hands and wrists. For example, he indicated that she was capable of sitting for not more than one hour at a time before needing to stand and could stand for only one hour at a time before needing to sit down or walk around, and that she could sit for about four hours total in an eight-hour workday and stand and walk for a total of two hours in an eight-hour work day. (Tr. 356-57.) Garza, however, does not contend that Judge Green erred in not according controlling weight to these opinions and, as Judge Green found, there is no evidence in the record to support these opinions.

4

Judge Green acknowledged Dr. Hood's opinions but determined that they were not entitled to controlling weight because they were not supported by other medical evidence in the record and were not supported by Dr. Hood's own treatment records. (Tr. 328-29.)

Garza contends that Judge Green's determination is incorrect; she contends that Dr. Hood's treatment records support his opinion and that other evidence supplied by consulting physician James Woessner, M.D., supports Dr. Hood's opinion. She further contends that Judge Green erred because he failed to comply with the treating physician rule set forth under 20 C.F.R. §§ 404.1527(d), 416.927(d) and explained in *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

Garza's contentions must be rejected. Judge Green complied with the treating physician rule. He acknowledged the frequency of examination and the nature and extent of the treating relationship between Dr. Hood and Garza. (Tr. 328-29.) He also specifically addressed Dr. Hood's opinions and, contrary to Garza's contentions, was correct in determining that the opinions were not supported by the medical evidence in the record or Dr. Hood's own treatment notes.

Contrary to Garza's contentions, Dr. Woessner's examining notes do not support Dr. Hood's opinions. Dr. Woessner did indicate that Garza was limited in the ability to use her hands and wrists. For example, he noted that Garza was limited in her ability to lift, carry, and handle objects. (Tr. 196.) He also noted that "considering the appearance of her hands, her history, and her complaints . . . she has [a] fairly high level of pain in her

5

hands" and was likely to have "dysfunction in the form of weakness and [] some decreased or altered sensation." He further noted that she had weakness in both hands, which he thought was at a 4/5 level in regard to grip and other movements and that she could reach but could "not really handle, finger, or feel with either hand." (*Id.*)

However, Dr. Woessner discussed his examination with consulting physician Walter F. Buell, M.D., after he examined Garza and signed a document on which it was indicated that he believed that Garza could perform light work activities that did not involve repetitive hand/finger activities.[3] (Tr. 197.)

Further, Dr. Hood's treatment notes do not support the limitations he indicated in the questionnaire. Dr. Hood first examined Garza on July 16, 2003. (*See* Tr. 370-71.) At that time Garza had previously undergone a closed reduction and pinning of her left wrist, carpal tunnel release on her left wrist in 1999, and carpal tunnel release on her right wrist in July 2002. (*See, e.g.,* Tr. 230.) Dr. Hood noted that Garza complained of continuing pain and problems picking up things and an inability to do the manual labor she had done in the past. He also noted that Garza had poor grip strength and range of motion in her hands and that both wrists showed some deformity. (Tr. 370-71.) He ordered nerve conduction studies for both hands and prescription pain medication. (*Id.*)

---

[3] Dr. Buell wrote: "[Dr. Woessner] felt that there was restriction in the movement of the hands and wrists, but not to the extent that no activity was possible. Noting that the claimant felt that she could dress and groom herself and restricted herself to not lifting or carrying heavy objects and that she was able to fill out her own disability forms, Dr. Woessner agreed that light work activities with avoidance of repetitive hand/finger activities were appropriate." (Tr. 197) (emphasis in the original).

6

The nerve conduction studies Dr. Hood ordered showed moderate right sensory/motor carpal tunnel syndrome, mild to moderate left sensory/motor carpal tunnel syndrome, and no evidence of entrapment neuropathy in Garza's upper extremities. (Tr. 377-78.) Thereafter, Dr. Hood provided Garza with routine check-ups, treatment for her diabetes and complaints of pain, and treatment for health problems such as upper respiratory infections and cold symptoms. (Tr. 361-65.)

The results of the nerve conduction studies which showed mild to moderate carpal tunnel syndrome and the course of conservative treatment Dr. Hood provided Garza demonstrate, as Judge Green found, that Dr. Hood's records do not support his opinions, which if adopted, would effectively preclude Garza from all work.

B.   *Judge Green's step five determinations*

Garza contends that the jobs cited by the vocational expert require exertional capabilities and literary skills beyond Judge Green's hypothetical and that there is a conflict between the descriptions of the jobs in the Dictionary of Occupational Titles (DOT) and the vocational expert's testimony that Judge Green should have resolved.

Judge Green asked the vocational expert whether there were jobs in the national economy an individual could perform if such individual was limited to simple light work, could only occasionally use her hands, and was not required to read in order to perform the requirements of work. (Tr. 389.) The vocational expert testified that such an individual could perform the jobs of machine tender, tag machine operator, and school bus monitor.

(*Id.*) Upon further questioning the vocational expert testified that the position of machine tender never required fingering and required only occasional reaching and handling and that the position of tag machine operator required only occasional reaching, handling, and fingering. (Tr 390, 393.) In regard to the job of school bus monitor, the vocational expert testified that the DOT indicated that the position required a reasoning, language, and mathematics level of two but did not require reading. (Tr. 390.) Thus, contrary to Garza's contentions, the vocational expert's testimony regarding the identified jobs meets the specifications in Judge Green's hypothetical question.

Garza contends, however, that she is illiterate and does not have the capabilities described in the under level two reasoning, language, and mathematics described in the DOT and indicated as required of a school bus monitor. She further contends that the other two jobs identified by the vocational expert require frequent reaching and handling which the DOT describes as one-third to two-thirds of the time which does not meet Judge Green's determination that she is capable of only occasional reaching.

According to Ruling 00-04p the ALJ may rely on vocational expert testimony that conflicts with the DOT because the DOT lists maximum requirements of occupations as they are generally performed rather than the range of requirements of specific jobs as they are performed in specific settings. S.S.R. 00-04p, 2000 WL 1898704 at * 2. In this case, the vocational expert provided information not included in the DOT; specifically, he testified that the identified jobs would require only occasional use of the hands and would

not require reading. (Tr. 390, 393.) The Fifth Circuit Court of Appeals has held that the DOT is not comprehensive and "does not purport to include each and every specific skill or qualification for a particular job," and therefore, the "value of a vocational expert is that he or she is familiar with the specific requirements of a particular occupation, including working conditions . . . ." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). Therefore, in cases in which there is an implied or indirect conflict between vocational expert testimony and information in the DOT, the ALJ may rely on vocational expert testimony, so long as the record reflects an adequate basis for doing so. *Id.* at 146; *cf.* S.S.R. 00-04p at *2.

In this case the record reflects such a basis. There is substantial evidence that Garza could perform the jobs identified by Judge Green which involved only occasional use of her hands. Garza indicated on application documents that she was able to take walks for exercise and that her physical problems did not limit her ability to perform personal care tasks such as grooming, bathing, and dressing. (Tr. 95-96.) She testified at the first hearing that during the day she cleaned her house, cooked, shopped for groceries, and took care of her granddaughter who was then one and one-half years old. (Tr. 42-43.) At the second hearing she testified that she had cared for her granddaughter since she was a newborn baby and that Child Protective Services had recently assigned her as the primary caretaker for the child who was then four years old. (Tr. 383, 386-87.) And she again testified that she was able to clean her house and that she cooked for herself and for her granddaughter. (Tr. 384.)

Garza's ability to provide primary care for her infant granddaughter, which would require more than occasional use of the hands, provides substantial support for Judge Green's conclusion that she could perform light work that required only occasional use of her hands.

Finally, Judge Green's determination that Garza can perform the job of school bus monitor is supported by substantial evidence. Citing 20 C.F.R. § 416.974, Judge Green determined that Garza had "a seventh grade education and [was] not illiterate." (Tr. 331.) Garza contests this determination as well as the determination that she can perform the job of school bus monitor. She points out that the DOT indicates that the position requires a language development level of two which involves a passive vocabulary of 5,000-6,000 words, the ability to read at a rate of 190-215 words per minute, the ability to read adventure stories and comic books, the ability to look up unfamiliar words in a dictionary for meaning, spelling, and pronunciation, the ability to read instructions for assembling model cars and airplanes, and the ability to write complex and compound sentences. *See* Dictionary of Occupational Titles, Appendix C, Components of the Definition Trailer at http://www.oalj.dol.gov/public/dot/refrnc/dotappc.htm (last accessed on November 22, 2005).

As an initial point, it is immaterial whether Garza is or is not illiterate or whether the DOT indicates that the job of school bus monitor requires level two reasoning and language abilities because the vocational expert testified that the job of school bus

10

monitor did not require reading. (Tr. 390.) In addition, under 20 C.F.R. § 416.964, the regulation Judge Green cited, a claimant is considered illiterate if he or she cannot read or write a simple message. 20 C.F.R. § 416.974(b)(1). The regulations advise that such claimants generally will have had little or no formal schooling. *Id.* A claimant is considered to have a marginal education when he or she has abilities in reasoning, arithmetic, and language skills necessary to perform simple, unskilled jobs. 20 C.F.R. § 416.974(b)(2). The Commissioner generally considers formal schooling at a sixth grade level or less to be a marginal education. *Id.* Thus, because Garza has a seventh grade education, Judge Green did not err in determining that she was not illiterate. *See id.*

Further, the evidence rebuts Garza's claim that she is illiterate. Garza admitted that she obtained her driver's license although she claimed she guessed at the answers to written questions (Tr. 387-88) and indicated on an application document that her physical problems did not limit her ability to read the newspaper (Tr. 96); Dr. Woessner reported that Garza was able to complete written documents required for her SSI application (Tr. 197), and as Judge Green noted, she repeatedly reported during the application process that she had a seventh grade education and was able to read and write more than just her name (Tr. 330, 101, 122).

## IV. <u>Recommendation</u>

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Garza's appeal with prejudice.

11

V.   **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _December 19_, 2005.

_____
NANCY M. KOENIG
United States Magistrate Judge